UNITED STATES of America,
Plaintiff–Appellee,

v.

Cynthia M. STONER, Defendant–
Appellant.

No. 94–6377.

United States Court of Appeals,
Tenth Circuit.

Oct. 10, 1996.

Ross Nick Lillard, III, Assistant U.S. Attorney, Oklahoma City, OK (Rozia McKinney–Foster, Assistant U.S. Attorney, Oklahoma City, OK, with him on the brief), for Plaintiff–Appellee.

Kenneth E. Holmes, Holmes and Jackson, Ponca City, OK, for Defendant–Appellant.

Before PORFILIO, HENRY and BRISCOE, Circuit Judges.

HENRY, Circuit Judge.

The defendant, Cynthia M. Stoner, appeals her conviction and sentence following a jury verdict for conspiracy under 18 U.S.C. § 371 relating to the embezzlement of tribal funds. Ms. Stoner contends that the district court should have granted her motion for judgment of acquittal because the government failed to

allege and prove that an overt act occurred within the applicable statute of limitations. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm the district court's judgment.

## I. BACKGROUND

Ms. Stoner is a member of the Ponca Indian Tribe. In 1986, she was elected to the Ponca Tribal Business Committee ("the Committee"), the body responsible for the governance of the Ponca Tribe. Ms. Stoner later became the Chairman of the Committee. It was in that capacity that she had general supervision and control over the Tribe.

Subsequently, Ms. Stoner's alleged co-conspirator, Ledavie Rhodd, was elected to the position of Secretary/Treasurer for the Committee. As such, Ms. Rhodd joined Ms. Stoner as a signatory to the tribal bank accounts. At issue in this case are the accounts containing the funds for the tribal loan program and the tribal burial program. The government alleged at trial that between March of 1988 and August of 1989, twenty-five checks totaling approximately $25,000.00 were written out of the loan and burial accounts for improper purposes. These checks were payable to the order of cash or to Ledavie Rhodd. Of the twenty-five checks, approximately eight bore the signature of Ms. Stoner.

On March 16, 1994, a grand jury returned a four-count indictment charging Ms. Stoner with conspiracy to embezzle and convert monies belonging to the Ponca Indian Tribe in violation of 18 U.S.C. § 371 and with three counts of embezzlement in violation of 18 U.S.C. § 1163. With regard to the conspiracy count, the indictment stated that Ms. Stoner conspired to embezzle tribal funds "in or about March 1988, and continuing thereafter until in or about August 1989, the exact dates being unknown to the Grand Jury." *See* Aplt's App. at 2. It further charged that Ms. Stoner "committed or caused to be committed various overt acts ... including, but not limited to" five acts specifically listed in the conspiracy count, all of which occurred *before* March 16, 1989. *See id.* at 3. With regard to the embezzlement counts of the indictment, the government alleged that Ms. Stoner had converted tribal funds on three occasions *after* March 16, 1989.

On the first day of her trial, Ms. Stoner filed a motion to dismiss the conspiracy count against her, arguing that the indictment failed to allege the commission of an overt act during the five-year limitations period preceding the filing of the indictment. The district court denied this motion, and the case proceeded to trial. Ms. Stoner was subsequently convicted on the conspiracy count, but was acquitted on the three embezzlement counts. After the jury returned its verdict, Ms. Stoner moved the district court for a judgment of acquittal under Fed. R.Crim.P. 29, based on the same argument as that raised in her motion to dismiss. The court denied this motion, sentenced Ms. Stoner to twelve months' incarceration and to three years' supervised release, and ordered her to pay restitution to the Ponca Tribe in the amount of $19,200.00.

## II. DISCUSSION

Ms. Stoner argues on appeal that the district court erred in denying her motion for a judgment of acquittal for two reasons: (1) because the evidence presented at trial was insufficient to establish that an overt act in furtherance of the conspiracy was committed within the five year statute of limitations; and (2) because the indictment failed to allege an overt act occurring within the limitations period.

The government responds that the evidence presented at trial was sufficient to establish the commission of an overt act within the statute of limitations period. With regard to Ms. Stoner's challenge to the indictment, the government maintains that an indictment need not allege the same overt act that is proven at trial. Instead, the government argues, a conspiracy conviction should be upheld if the indictment alleges an overt act as part of the conspiracy offense and the evidence presented at trial establishes that an overt act occurred within the limitations period, even if the overt act proven at trial is different than the overt act alleged in the indictment. Alternatively, the government

argues, even if it were required to allege a timely overt act in the indictment, it satisfied this requirement by listing timely overt acts in the embezzlement counts of the indictment, which it argues are implicitly incorporated into the conspiracy count.

### A. Sufficiency of the Evidence

■ As to her challenge to the evidence, we first note that Ms.Stoner did not include the entire trial transcript in the record on appeal. Accordingly, we are not required to consider this contention. "The appellant is responsible for insuring that all materials on which he seeks to rely are part of the record on appeal. When the appellant asserts that his conviction should be reversed because of a particular error, and the record does not permit the [sic] us to evaluate the claim, we will generally refuse to consider it." *See United States v. Vasquez*, 985 F.2d 491, 495 (10th Cir.1993); *see also* 10th Cir. R. 10.3 ("When the party asserting an issue fails to provide a record sufficient for consideration of that issue, the court may decline to consider it."). Had the government not supplemented the record with portions of the trial transcript omitted by Ms. Stoner, it would be difficult, if not impossible, to thoroughly review her challenge to the sufficiency of the evidence underlying her conviction. However, aided by the government's supplemental appendix, we exercise our discretion to consider this claim.

■ In reviewing Ms. Stoner's sufficiency-of-the-evidence claim, we view the evidence in the light most favorable to the government. *See United States v. Robertson*, 45 F.3d 1423, 1441 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2258, 132 L.Ed.2d 265 (1995), *and cert. denied*, —— U.S. ——, 115 S.Ct. 2259, 132 L.Ed.2d 265 (1995), *and cert. denied*, —— U.S. ——, 116 S.Ct. 133, 133 L.Ed.2d 81 (1995); *United States v. Horn*, 946 F.2d 738, 741 (10th Cir.1991); *United States v. Daily*, 921 F.2d 994, 1011 (10th Cir.1990), *cert. denied*, 502 U.S. 952, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991). If any

reasonable jury could have found that the essential elements of the crime were proved beyond a reasonable doubt, the evidence is deemed sufficient to support the conviction. *See United States v. Hauck*, 980 F.2d 611, 613 (10th Cir.1992); *Horn*, 946 F.2d at 741; *Daily*, 921 F.2d at 1011–12.

■ Under 18 U.S.C. § 371, the government must prove the following elements: "(1) an agreement; (2) to break the law; (3) an overt act; (4) the purpose of which is to further the object of the conspiracy; and (5) that the defendant entered the conspiracy willfully." *United States v. Davis*, 965 F.2d 804, 811–12 (10th Cir.1992), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993).[1] Conspiracy prosecutions under § 371 are governed by the five-year statute of limitations provided in 18 U.S.C. § 3282. *See Hauck*, 980 F.2d at 613 ("To satisfy the statute of limitations, the prosecution must show that the conspiracy continued to exist five years prior to the indictment...."). Therefore, in this case, because the indictment charging Ms. Stoner was returned on March 16, 1994, the government had to prove that the conduct constituting the conspiracy occurred some time after March 16, 1989.

Upon review of the record, we conclude that reasonable factfinders could have found Ms. Stoner guilty beyond a reasonable doubt on the conspiracy charge against her. Among the evidence at trial was the testimony of Ms. Ledavie Rhodd. She testified, and the jury apparently believed, that Ms. Stoner was in charge of the embezzlement scheme and that Ms. Stoner decided when and how Ms. Rhodd would cash the checks, as well as how the proceeds would be divided. *See* Aplt's App. at 38, 56. In addition, Ms. Stoner admitted that she signed some of the checks that were cashed, *see id.* at 86–87, and she failed to provide the jury with a credible excuse as to how she could have signed the checks, particularly those on which her signature appeared below Ms. Rhodd's, without being aware of Ms. Rhodd's improper activities. *See id.* at 87. Finally, the government

---

1. Section 371 provides that "[i]f two or more persons conspire ... to commit any offense against the United States ..., and one or more of such persons do any act to effect the object of the

conspiracy, each shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 371.

introduced evidence linking cash deposits into Ms. Stoner's checking account to checks cashed by Ms. Rhodd drawn from the loan and burial accounts. *See* Aple's Supp.App. at 49–54.

▇ Specifically regarding the element of a timely overt act, the record on appeal reflects evidence of overt acts that occurred after March 16, 1989, the date five years preceding the return of Ms. Stoner's indictment. Ms. Rhodd testified that she wrote and cashed improper checks during the period from March 1988 through August 1989. *See* Aplt's App. at 36. Also, Agent Barnes testified that a check in the amount of $1,450 was cashed on June 6, 1989 and that Ms. Stoner made a cash deposit into her checking account on June 7, 1989 in the amount of $400. *See id.* at 74. Taken together, the evidence at trial, viewed in the light most favorable to the government, *see Robertson,* 45 F.3d at 1441, was sufficient to establish the elements of a conspiracy.[2]

### B. Sufficiency of the Indictment

#### 1. Requirements for Indictments in Conspiracy Cases

▇▇ This court reviews de novo the sufficiency of a charge in an indictment. *United States v. Wood,* 958 F.2d 963, 974 (10th Cir. 1992), *amended on denial of reh'g,* Nos. 90–2184, 91–2007, 91–2008, 1992 WL 58305 (10th Cir. March 19, 1992). An indictment must, "first, contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and, second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *see also Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *United States v. Kilpatrick,* 821 F.2d 1456, 1461 (10th Cir.1987), *cert. granted in part,* 484 U.S. 1003, 108 S.Ct. 693, 98 L.Ed.2d 645

(1988), *and aff'd,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *United States v. Radetsky,* 535 F.2d 556, 562 (10th Cir. 1976), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976). "[T]he indictment should be read as a whole and interpreted in a common-sense manner.... Courts ... do not insist that any particular word or phrase be used in stating an essential element." *Kilpatrick,* 821 F.2d at 1462, 1463.

In light of these requirements, analysis of the sufficiency of an indictment typically begins with consideration of the elements of the offense charged. Reviewing the elements of a § 371 conspiracy, several of our prior cases have concluded that "it is necessary to allege and prove an overt act," *see Hudspeth v. McDonald,* 120 F.2d 962, 965 (10th Cir.), *cert. denied,* 314 U.S. 617, 62 S.Ct. 110, 86 L.Ed. 496 (1941); *see also Laska v. United States,* 82 F.2d 672, 674 (10th Cir.) ("[A]n overt act by some member [of the conspiracy] must be alleged and proven...."), *cert. denied,* 298 U.S. 689, 56 S.Ct. 957, 80 L.Ed. 1407 (1936). This circuit has not yet addressed the issue of whether the overt act proved at trial must be the same overt act alleged in the indictment *See Hauck,* 980 F.2d at 613 (leaving this question open).

However, a number of other circuits have upheld conspiracy convictions in instances in which the government proves a different overt act than the act alleged in the indictment. *See United States v. Armone,* 363 F.2d 385, 400 (2d Cir.) (prosecution under the conspiracy provision of federal narcotics laws, 21 U.S.C. §§ 173, 174), *cert. denied,* 385 U.S. 957, 87 S.Ct. 391, 392, 398, 17 L.Ed.2d 303 (1966); *United States v. Negro,* 164 F.2d 168, 173 (2d Cir.1947) (conspiracy charge under 18 U.S.C. § 88); *United States v. Schurr,* 794 F.2d 903, 907 n. 4 (3d Cir.1986) (prosecution for conspiracy to violate 29 U.S.C. § 186); *United States v. DiPasquale,* 740 F.2d 1282, 1294 (3d Cir.1984) (conspiracy charge under 18 U.S.C. § 894(a)), *cert. de-*

---

**2.** The fact that Ms. Stoner was acquitted of the embezzlement counts does not alter our conclusion. An acquittal as to one count does not "preclude[ ] reliance upon facts relevant to that count" for purposes of evaluating claims regarding another count. *See United States v. Meyers,* 646 F.2d 1142, 1145 (6th Cir.1981) (applying this rule to allow the government to rely upon facts relevant to the substantive count upon which the defendant was acquitted "in evaluating the sufficiency of the evidence as to the conspiracy count" (quoting *United States v. Lubrano,* 529 F.2d 633, 636 n. 1 (2d Cir.1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 61, 50 L.Ed.2d 78 (1976))).

*nied,* 469 U.S. 1228, 105 S.Ct. 1226, 1227, 84 L.Ed.2d 364 (1985); *United States v. Adamo,* 534 F.2d 31, 39 (3d Cir.) (conspiracy charge under 18 U.S.C. § 371), *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976); *Strauss v. United States,* 311 F.2d 926, 932 (5th Cir.) (conspiracy charge under 18 U.S.C. § 371), *cert. denied,* 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963); *United States v. Harris,* 542 F.2d 1283, 1300 (7th Cir.1976) (conspiracy charge under 21 U.S.C. § 846), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); *United States v. Clay,* 495 F.2d 700, 706 (7th Cir.) (conspiracy charge under 18 U.S.C. § 371), *cert. denied,* 419 U.S. 937, 95 S.Ct. 207, 42 L.Ed.2d 164 (1974); *Brulay v. United States,* 383 F.2d 345, 350 (9th Cir.) (conspiracy charge under 18 U.S.C. § 371), *cert. denied,* 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967). These decisions reason that the change in overt acts from indictment to trial constitutes a simple variance. *See generally Dunn v. United States,* 442 U.S. 100, 105, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743 (1979) (defining a variance as "aris[ing] when the evidence adduced at trial establishes facts different from those alleged in an indictment"), *quoted in United States v. Edwards,* 69 F.3d 419, 432 (10th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996); *United States v. Williamson,* 53 F.3d 1500, 1512–13 (10th Cir.) (discussing simple variances), *cert. denied,* — U.S. —, 116 S.Ct. 218, 133 L.Ed.2d 149 (1995). According to these decisions, such a simple variance does not warrant the reversal of a conviction so long as the variance "d[id] not affect [the defendant's] substantial rights," Fed.R.Crim.P. 52(a); *see Schurr,* 794 F.2d at 907 n. 4; *Harris,* 542 F.2d at 1300; *Adamo,* 534 F.2d at 39; *Clay,* 495 F.2d at 706; *Brulay,* 383 F.2d at 351; *Armone,* 363 F.2d at 400; *Strauss,* 311 F.2d at 932; *Negro,* 164 F.2d at 173.

Although these cases are instructive, none of them involves the statute of limitations concerns raised by a variance between an *untimely* overt act alleged in the indictment and a *timely* overt act proved at trial. However, the Fifth Circuit, which in *Strauss,* 311 F.2d at 932 had employed the usual harmless error analysis in considering a variance in

overt acts, adopted a different approach when an untimely overt act was alleged in the indictment. *See United States v. Davis,* 533 F.2d 921, 929 (5th Cir.1976). In *Davis,* the defendants argued that the district court had erred in denying their motions for dismissal of the indictment and for judgments of acquittal because "the indictment failed to allege an offense within the five year general statute of limitations." *Id.* at 923. The Fifth Circuit reversed the district court, holding that the indictment did not allege a timely overt act in furtherance of the conspiracy, *id.* at 927, and that the government could not satisfy the statute of limitations by proving a timely overt act at trial that was not alleged in the indictment, *id.* at 929 (holding that *"for purposes of the statute of limitations the overt acts alleged in the indictment and proved at trial mark the duration of the conspiracy"*); *see also United States v. Girard,* 744 F.2d 1170, 1173 (5th Cir.1984) (recognizing as a "requirement that an overt act in furtherance of the conspiracy within the prescribed time frame ... be alleged"). The *Davis* court distinguished a Second Circuit case, *United States v. Armone,* 363 F.2d 385 (2d Cir.), *cert. denied,* 385 U.S. 957, 87 S.Ct. 391, 392, 398, 17 L.Ed.2d 303 (1966), which held that "the substitution of proof of an unalleged for an alleged overt act does not constitute a fatal variance," *id.* at 400, based in part on the fact that *Armone* "did not deal with a statute of limitation question." Thus, under *Davis,* an indictment that does not allege the commission of an overt act within the statute of limitations is subject to dismissal on its face.

■ Upon considering the numerous decisions applying the harmless error approach to simple variances between the indictment and the evidence at trial, we conclude that the absolute approach taken in *Davis* is appropriate only as to indictments that do not allege that the conduct constituting the conspiracy occurred within the statute of limitations period. Prosecutions on the basis of such indictments infringe a defendant's Fifth Amendment right to be convicted on facts found by a grand jury, *see* U.S. Const. amend. V; *Russell,* 369 U.S. at 760, 82 S.Ct. at 1045; *Radetsky,* 535 F.2d at 562. In

particular, the absence of an allegation that the conduct constituting the conspiracy fell within the limitations period creates a risk that the petit jury could convict the defendant of acts not charged by, or "even presented to, the grand jury," *see Russell*, 369 U.S. at 770, 82 S.Ct. at 1050. The Fifth Amendment does not allow the government to prosecute a charge of conspiracy based on conduct that falls within the statute of limitations pursuant to an indictment that charges only conduct that is barred by the statute of limitations.

Similarly, an indictment lacking any allegation that the conspiracy offense was committed within the limitations period infringes a defendant's Sixth Amendment right "to be clearly informed of the nature and the cause of the accusation against [her]," *see Nevius v. Sumner*, 852 F.2d 463, 471 (9th Cir.1988), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); *see also* U.S. Const. amend. VI. A defendant who is confronted with untimely conspiracy allegations should not be required to guess what timely offenses the government will subsequently allege at trial. Providing adequate notice to the defendant is of particular concern in prosecutions involving the somewhat amorphous crime of conspiracy. *Cf. Krulewitch v. United States*, 336 U.S. 440, 445–47, 69 S.Ct. 716, 719–20, 93 L.Ed. 790 (1949) (Jackson, J., concurring) (describing conspiracy as an "elastic, sprawling and per-

vasive offense," as being "so vague that it almost defies definition," and as "chameleon-like [because it] takes on a special coloration from each of the many independent offenses on which it may be overlaid"); *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir.1925) (referring to conspiracy as the "darling of the modern prosecutor's nursery"); *Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law* § 6.4(b), at 526 (2d ed. 1986) ("[I]t is clear that a conspiracy charge gives the prosecution certain unique advantages and that one who must defend against such a charge bears a particularly heavy burden."). For these reasons, an indictment must allege that the conduct constituting the conspiracy fell within the statute of limitations, and an indictment that does not contain such allegations is subject to dismissal on its face.

In contrast, in instances in which the indictment does contain allegations that the conduct constituting the conspiracy occurred within the statute of limitations period, we will apply the simple variance analysis adopted by several other circuits. Accordingly, in those instances, the government may prove at trial overt acts other than those alleged in the indictment, and the defendant's conviction should be upheld unless the variance between the overt acts alleged and proved affected the defendant's substantial rights.[3] We will now apply these principles to the indictment in the instant case.

3. In her insightful dissent, Judge Briscoe concludes that this variance analysis is inapplicable when, as here, an indictment alleges untimely overt acts and the government seeks to prove timely overt acts at trial. Following *Davis*, Judge Briscoe would hold that such an indictment should be dismissed on its face and that no inquiry into the prejudice suffered by the defendant is necessary.

If we were writing on a blank slate, Judge Briscoe's analysis would be even more persuasive. However, the great majority of decisions treat the difference between the overt acts alleged in an indictment and the overt acts proved at trial as simple variances and conclude that such a variance does not require the reversal of a defendant's conviction unless it affects the defendant's substantial rights. *See, e.g., Schurr*, 794 F.2d at 907 n. 4; *Harris*, 542 F.2d at 1300; *Adamo*, 534 F.2d at 39. Although it is true, as the dissent observes, that these decisions do not involve a statute of limitations issue (i.e. an in-

dictment alleging an untimely act and the proof of a timely overt act at trial), that distinction does not seem to render them inapplicable here.

In particular, when an indictment alleges certain timely overt acts and the government introduces evidence of other timely acts at trial (the situation confronted in the variance cases cited above), there is a risk of the same kinds of prejudice that the dissent suggests will result if indictments like the one against Ms. Stoner are not dismissed: defendants may be surprised by the evidence at trial (in violation of their Sixth Amendment rights) and, in violation of the Fifth Amendment, defendants may be prosecuted on the basis of facts not presented to the grand jury. Nevertheless, the variance cases do not presume that such prejudice exists. Instead, before reversing a conviction, these cases require the defendant to establish that she was prejudiced by the variance. We see no reason not to impose this same burden on Ms. Stoner.

### 2. The indictment against Ms. Stoner

#### a. Conduct within the limitations period

■ As noted above, because the indictment against Ms. Stoner was returned on March 16, 1994, she may not be prosecuted under § 371 for conduct occurring more than five years prior to that date. *See* 18 U.S.C. § 3282. We must therefore review the indictment to determine whether it alleges that Ms. Stoner engaged in conduct constituting a violation of § 371 after March 16, 1989.

■ The conspiracy count in the indictment lists five overt acts that were allegedly committed before March 1, 1989 (i.e. more than five years before the filing of the indictment). However, it also asserts that overt acts other than the untimely ones listed in the conspiracy count were committed in furtherance of the conspiracy. *See* Aplt's App. at 3 ("In furtherance of the conspiracy and to effectuate its purpose, defendant CYNTHIA M. STONER and others, committed or caused to be committed various overt acts ... *including, but not limited to,* the following: ...." (emphasis added)). In addition, the indictment alleges that Ms. Stoner conspired to embezzle tribal funds "in or about March 1988, and *continuing thereafter until in or about August 1989,* the exact dates being unknown to the Grand Jury." *See id.* at 2 (emphasis added). This statement, combined with the statement that unlisted overt acts were committed in furtherance of the conspiracy, indicates that, according to the grand jury, " 'the conspiracy [was] at work' " within the limitations period and that during that period, the conspiracy was "neither a project still resting in the minds of the conspirators nor a fully completed operation no longer in existence." *See Yates v. United States,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957) (quoting *Carlson v. United States,* 187 F.2d 366, 370 (10th Cir.), *cert. denied,* 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367 (1951), and describing the "function of the overt act in a conspiracy prosecution").[4] Accordingly, the indictment is not subject to dismissal on its face.[5]

We must now consider whether there was a variance between the overt acts alleged in the indictment and the evidence introduced at trial. If such a variance existed, we must then determine whether it prejudiced Ms. Stoner's substantial rights such that dismissal of the *indictment is warranted.*

#### b. The failure to incorporate the embezzlement counts into the conspiracy count

■ In defending the conspiracy charge, the government maintains that no variance existed between the overt acts alleged in the indictment and those proven at trial because the conduct alleged in the embezzlement counts was implicitly incorporated into the conspiracy count. Relying primarily on *United States v. Staggs,* 881 F.2d 1527 (10th Cir.1989) (en banc), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990), the government asserts that the conduct described in the embezzlement counts sufficiently alleged overt acts committed in furtherance of the conspiracy within the statute

---

4. It is not just the boilerplate language regarding the commission of overt acts "including but not limited to" those specifically listed in the indictment, *see* Aplt's App. at 3, that satisfies the statute of limitations. If the indictment contained only specific untimely acts and this boilerplate language, we would agree with the dissent that it should be dismissed. However, as we have noted, the indictment against Ms. Stoner also alleges that the § 371 conspiracy continued until "in or about August 1989," *see id.,* a date within the limitations period. It is that allegation, *combined* with the fact that the list of overt acts is not exclusive, that in our view establishes that the indictment is not subject to dismissal on its face.

We disagree with the dissent that this reading of the indictment precludes a trial court from dismissing other indictments prior to trial. Indictments that fail to allege the continuation of the conspiracy within the statutory period or that contain an exclusive list of untimely overt acts are still subject to dismissal without any additional showing of prejudice.

5. Although we conclude that the indictment's failure to list a specific timely overt act in the conspiracy count did not invalidate it, it is certainly preferable to include such an overt act, preferably in the conspiracy count itself, or alternatively through the conspiracy count's express reference to acts listed in other counts of the indictment. In this case, the indictment's failure to include a timely overt act in the conspiracy count through either of these methods is unexplained. Such a failure suggests that a bill of particulars would be warranted.

of limitations period. Thus, under the government's theory, the indictment's description of timely overt acts in the embezzlement counts defeats Ms. Stoner's variance claim and makes it unnecessary to undertake an inquiry into the possible prejudice suffered by her as a result of the discrepancy between the indictment and the evidence presented at trial.

The government's argument is not supported by the language of the indictment. Although the conduct described in the embezzlement counts is undoubtedly the same general kind of conduct as that described in the conspiracy count (the embezzlement of tribal funds), there is no express allegation in the embezzlement counts that the charged conduct was committed in furtherance of the conspiracy. Furthermore, the conspiracy count does not expressly incorporate the embezzlement counts by reference, as is authorized by Fed.R.Crim.P. 7(c)(1).

Moreover, we do not agree with the government that, under *Staggs*, the embezzlement counts were implicitly incorporated into the conspiracy count. In *Staggs*, the defendant-appellants argued that the court should reverse their conviction for engaging in a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848, because the CCE charges in the indictment failed to specifically allege three felony violations comprising the "series of violations" required by the CCE statute. This court upheld the defendants' convictions, ruling that "a CCE indictment is sufficient where, as here, the CCE counts charge appellants in the language of the statute, and the indictment additionally alleges at least three violations in another count or counts." *Id.* at 1531.

Although *Staggs* allowed the government to implicitly incorporate information into a CCE count from other counts of an indictment, it did not address whether the same practice is allowed in order to satisfy the charging requirements of a conspiracy count. *See Staggs*, 881 F.2d at 1532 ("[W]e will not require explicit incorporation by reference *under the facts of this case.*" (emphasis added)). The charge at issue in this case, conspiracy, is markedly different from the CCE charge at issue in *Staggs*. In particular, the element of the conspiracy charge at issue in this case, an overt act "to effect the object of the conspiracy," is substantially broader, and therefore substantially more vague, than the "continuing series of violations of the Controlled Substances Act" required for the CCE charge at issue in *Staggs*. That is, the defendant in a CCE case knows that the government must prove three specific violations of the Controlled Substances Act to make its case, whereas, in a conspiracy case, the defendant only knows that the government must prove a furthering overt act, which has no statutory limitations.

Although at least two other circuits have adopted the same rule regarding a CCE charge in an indictment that this circuit adopted in *Staggs, see United States v. Moya–Gomez*, 860 F.2d 706, 752 (7th Cir. 1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Becton*, 751 F.2d 250, 256–57 (8th Cir. 1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985), we know of no cases allowing implicit incorporation for purposes of determining the adequacy of a conspiracy allegation in an indictment. To the contrary, at least one circuit has expressly held that "the charging portion of a conspiracy count may not rely upon other counts within the indictment to cure deficiencies, unless those counts ... are expressly incorporated by reference." *United States v. Werme*, 939 F.2d 108, 111 (3d Cir.1991), *cert. denied,* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992).

Accordingly, we decline to apply the *Staggs* rule of implicit incorporation to § 371 conspiracy offenses. As a result, the sufficiency of a conspiracy charge in an indictment must be determined by examining only the conspiracy count itself and those other counts that the conspiracy count expressly incorporates. Application of this approach to the indictment in this case requires us to disregard the overt acts alleged in the embezzlement counts in assessing the sufficiency of the conspiracy charge against Ms. Stoner and therefore to conclude that there was a variance between the overt acts alleged in the indictment and the overt acts proven at trial. We must therefore undertake the

prejudice inquiry that is required when such a variance exists. *See, e.g., Schurr,* 794 F.2d at 907 n. 4. If the variance between the untimely overt acts alleged in the indictment and the overt acts proven at trial prejudiced Ms. Stoner's substantial rights, then the district court should have dismissed the indictment, and her conviction should be overturned.

### c. Ms. Stoner's failure to establish that the variance prejudiced her substantial rights

██ A variance can prejudice a defendant's substantial rights in several ways, including the following: The variance can be such that "the defendant could not have anticipated from the allegations in the indictment what the evidence would be at trial," thereby prejudicing the defendant's Sixth Amendment right to notice of the charges against her. *See United States v. Irwin,* 654 F.2d 671, 683 (10th Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982); *see also Berger v. United States,* 295 U.S. 78, 83, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935) (holding that a variance is immaterial where it " 'was not of a character which could have misled the defendant at the trial' " (quoting *Washington & G.R. Co. v. Hickey,* 166 U.S. 521, 531, 17 S.Ct. 661, 665, 41 L.Ed. 1101 (1897))); *Williamson,* 53 F.3d at 1513 (holding that where a simple variance occurs, the conviction is upheld if " 'the proof upon which [the conviction is] based corresponds to an offense that was clearly set out in the indictment,' " insuring that the defendant had notice of the charges against him (quoting *Hunter,* 916 F.2d at 599)); *DiPasquale,* 740 F.2d at 1294 (holding that a variance between overt acts is impermissible where it "deprives the defendant of fair notice"); *Adamo,* 534 F.2d at 39 (holding that the defendant had fair notice of the charges against him because the difference in the facts underlying the two overt acts was "slight"); *Clay,* 495 F.2d at 706 (holding that the variance between the overt acts alleged and proved was not fatal because the defendants had adequate notice that evidence of these acts might be presented at trial); *United States v. Crowder,* 346 F.2d 1, 3 (6th Cir.) (holding that the variance between facts al-

leged in the indictment and proved at trial was not fatal because the defendant had notice of what he must defend against), *cert. denied,* 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 (1965).

██ In addition to prejudicing a defendant's Sixth Amendment right to notice of the charges against her, a variance can be so great as to violate the defendant's Fifth Amendment right against double jeopardy because "a conviction based on the indictment would not bar a subsequent prosecution for the same offense;" *see Irwin,* 654 F.2d at 683; *see also Berger,* 295 U.S. at 83, 55 S.Ct. at 631 (holding that a variance is impermissible where it deprives the defendant of the right against double jeopardy); *DiPasquale,* 740 F.2d at 1294 (holding that a variance between overt acts is impermissible when it violates the defendant's right against double jeopardy); *Adamo,* 534 F.2d at 39 (holding that the variance in overt acts did not prejudice the defendant's right to avoid double jeopardy because the difference in the facts underlying the two overt acts was "slight"); *Crowder,* 346 F.2d at 3 (holding that the variance between facts alleged in the indictment and facts proved at trial was permissible because the charge in the indictment protected him against another prosecution).

██ Finally, where a legally defective element is alleged in the indictment, but a legally sufficient element is proved at trial (making it impossible to determine upon which element the conviction is based), a variance may prejudice the defendant's substantial right to be convicted on legally permissible grounds. *See Yates,* 354 U.S. at 312, 77 S.Ct. at 1073 (requiring "a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected"), *cited in Griffin v. United States,* 502 U.S. 46, 55–56, 112 S.Ct. 466, 472–73, 116 L.Ed.2d 371 (1991) (limiting *Yates* to cases where there is a general verdict and "one of the possible bases of conviction ... was ... legally inadequate"); *Grunewald v. United States,* 353 U.S. 391, 415, 77 S.Ct. 963, 979, 1 L.Ed.2d 931 (1957) (overturning conspiracy convictions because they "might

have rested on an impermissible ground"); *United States v. Self,* 2 F.3d 1071, 1093 (10th Cir.1993) (reversing the defendant's conspiracy conviction because "the jury could have based its verdict on a legally ... infirm objective"); *Irwin,* 654 F.2d at 680 (overturning the defendant's conspiracy conviction because "it cannot be determined whether the jury based its conspiracy verdict" on an invalid ground); *United States v. Beverly,* 913 F.2d 337, 362 & n. 35 (7th Cir.1990) (noting that "[n]umerous courts have reversed general verdicts on the basis of *Yates* where one of the objects in a multi-object count is legally invalid" and listing such decisions), *cert. denied,* 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991), *and cert. granted,* 498 U.S. 1082, 111 S.Ct. 951, 112 L.Ed.2d 1039 (1991), *and aff'd,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *Cramer v. Fahner,* 683 F.2d 1376, 1379 (7th Cir.1982) (overturning the defendant's conspiracy conviction based on the appellate court's inability "to tell whether the jury based its verdict on the valid or invalid counts"), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982); *United States v. Head,* 641 F.2d 174, 179 (4th Cir.1981) (overturning the defendant's conspiracy conviction because there was "no way of knowing whether [the defendant] was convicted for an offense barred by limitations"), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983); *cf. United States v. McNutt,* 908 F.2d 561, 565 (10th Cir.1990) (upholding the defendant's conspiracy conviction where "the jury indicated by special verdict that it relied *both* on" a valid and an invalid "underlying offense agreed upon by the ... conspirators"), *cert. denied,* 498 U.S. 1084, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991).

In the instant case, Ms. Stoner has failed to establish that the variance between the untimely overt acts alleged in the indictment and the evidence at trial prejudiced her substantial rights in any way. In particular, neither at trial nor on appeal has Ms. Stoner claimed that she was unfairly surprised by the proof of the timely overt acts at trial. *Cf. Fruehauf Corp.,* 577 F.2d at 1057 (noting the defendant's failure to claim that he was surprised or misled by the variance in proof of overt acts as an indication that the defendant's Sixth Amendment right to fair notice had not been prejudiced by that variance); *Adamo,* 534 F.2d at 39 (same); *Goble,* 512 F.2d at 466 (same); *Brulay,* 383 F.2d at 351 (same). Also, at no point did she file a motion for a bill of particulars in an effort to learn what timely overt act the government would attempt to prove at trial so that she could better prepare her defense, *see* Fed. R.Crim.P. 7(f). Such a motion could have included a claim that her conspiracy prosecution was barred by the statute of limitations. *Cf. Brulay,* 383 F.2d at 351 (noting the defendant's failure to move for a bill of particulars as an indication that the variance between the overt act alleged and that proved "did not affect the defendant's ... substantial rights"); *United States v. Kruse,* 415 F.Supp. 701, 704 (W.D.Pa.1976) (same), *aff'd in part, rev'd in part,* 547 F.2d 1165 (3d Cir.1977).[6] Nor has Ms. Stoner claimed that the variance in overt acts put her in danger of double jeopardy. *Cf. Adamo,* 534 F.2d at 39 (noting the defendant's failure to claim that his right against double jeopardy was violated by the variance as an indication that such right had not been prejudiced by the variance in proof of overt acts). Finally, neither at trial nor on appeal has Ms. Stoner argued that the untimely overt acts alleged in the indictment created the risk that her conspiracy conviction was based on legally insufficient grounds. *See United States v. Wilkinson,* 754 F.2d 1427, 1432 (2d Cir.) (holding that a *Yates* issue is subject to waiver), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). Indeed, although a review of jury instructions is often necessary in order to assess this final kind of potential prejudice, Ms. Stoner has not included these instructions in the record on appeal. Accordingly, because Ms. Stoner has

6. Although "a bill of particulars cannot save an invalid indictment," *Russell,* 369 U.S. at 770, 82 S.Ct. at 1050; *see also United States v. Neal,* 692 F.2d 1296, 1302 (10th Cir.1982) (same); *Radetsky,* 535 F.2d at 563 (same), where the indictment itself is valid, as it was here, a bill of particulars, if granted, can significantly aid the defendant in preparing her defense. Here, for example, Ms. Stoner could have requested the government to disclose the overt acts that it would seek to establish at trial.

failed to demonstrate that she was prejudiced by the variance between the overt acts alleged in her indictment and the overt acts proved at trial, the district court did not err in denying her motion to dismiss the indictment and her motion for a judgment of acquittal on the grounds of the indictment's failure to allege a timely overt act.

## III. CONCLUSION

In sum, we conclude that there was sufficient evidence to support Ms. Stoner's conviction under 18 U.S.C. § 371. We further conclude that the district court did not err in refusing to dismiss the indictment. Accordingly, we AFFIRM Ms. Stoner's conspiracy conviction.

BRISCOE, Circuit Judge, dissenting:

Because I conclude that count 1 of the indictment is barred by the statute of limitations, I respectfully dissent. I would reverse on the statute of limitations issue and not reach the sufficiency of evidence issue.

In this circuit, a criminal statute of limitations "operate[s] as a jurisdictional limitation upon the power to prosecute and punish." *Waters v. United States,* 328 F.2d 739, 743 (10th Cir.1964); *see United States v. Cooper,* 956 F.2d 960, 961–62 (10th Cir.1992) (acknowledging and reaffirming *Waters*). Thus, the challenge raised by Stoner to the timeliness of count 1 goes to the very ability of the district court to convict and punish her for the charges contained in count 1.

Stoner was charged in count 1 with violating the general federal conspiracy statute, 18 U.S.C. § 371. Section 371 does not contain an express statute of limitations; thus, the general five-year limitations period for non-capital offenses, 18 U.S.C. § 3282, applies to conspiracies charged under § 371. *See, e.g., United States v. Gornto,* 792 F.2d 1028, 1033 n. 3 (11th Cir.1986). To satisfy the statute of limitations, the prosecution must show the conspiracy continued to exist five years prior to the indictment, and "at least one overt act in furtherance of the conspiratorial agreement was performed within that period." *United States v. Hauck,* 980 F.2d 611, 613 (10th Cir.1992).

The indictment in this case was returned on March 16, 1994, and contained four counts. Count 1 of the indictment alleged the scope of the charged conspiratorial agreement was to "willfully, unlawfully, and knowingly combine, conspire, confederate, and agree to embezzle and convert to [the conspirators'] own use moneys belonging to the Ponca Tribe, an Indian Tribal organization, which was at all times subject to the laws of the United States relating to Indian Affairs, in violation of Title 18, United States Code, Section 1163." Aplt's App. at 2. Count 1 further alleged the conspiracy took place "[f]rom in or about March 1988, and continuing thereafter until in or about August 1989, the exact dates being unknown to the Grand Jury." *Id.* In the section of count 1 entitled "OVERT ACTS," five specific overt acts in furtherance of the conspiracy were alleged, all occurring between February 5, 1988, and March 13, 1989. *Id.* at 3–4. These acts include: (1) the opening of a burial program bank account on February 5, 1988; (2) Stoner directing issuance of a check in the amount of $1,000 from the burial account on January 31, 1988; (3) Stoner cosigning a check in the amount of $1,000 from the loan fund account on May 16, 1988; (4) Stoner cosigning a check in the amount of $800 from the loan fund account on February 23, 1989; and (5) Stoner cosigning a check in the amount of $800 from the loan fund account on March 13, 1989. *Id.* The three remaining counts charged Stoner with embezzlement, in violation of 18 U.S.C. § 1163, alleging she had converted tribal funds on three occasions *after* March 16, 1989.

On the first day of her jury trial, Stoner filed a motion to dismiss count 1 on the grounds that it failed to allege commission of an overt act during the five-year limitations period preceding the filing of the indictment (i.e., March 16, 1989 to March 16, 1994). The motion was summarily overruled by the trial court, and Stoner was subsequently convicted on count 1 and acquitted on the remaining three embezzlement counts. On appeal, Stoner again urges that count 1 was time-barred and should have been dismissed.

The issue raised by Stoner, whether a conspiracy charge under § 371 requires the

government to allege a timely overt act in the indictment, is one of first impression in this circuit. Notably, however, the Fifth and Eleventh Circuits have previously addressed this question and agree that an indictment charging a conspiracy under § 371 must allege a timely overt act.

In *United States v. Davis*, 533 F.2d 921 (5th Cir.1976), defendants Sammie Lee Davis and Jasper Edward Baccus were charged in a single-count indictment, returned on September 5, 1974, of conspiring, in violation of § 371, to knowingly and willfully make and cause to be made false, fictitious, and fraudulent statements and representations as to material facts in a matter within the jurisdiction of the United States Department of Labor, Manpower Administration. At the district court level, Davis and Baccus moved for dismissal of the indictment prior to trial, and moved for judgments of acquittal during trial, asserting the indictment failed to allege an offense within the five-year limitations period. Defendants' motions were denied by the trial court. Defendants appealed their convictions, and continued to assert that prosecution of the conspiracy was barred by the statute of limitations because the charged offense occurred more than five years prior to the return of the September 5, 1974 indictment.

In addressing defendants' challenge to the timeliness of the indictment, the Fifth Circuit began by reviewing the essential elements of a conspiracy under § 371 and by noting that, in a conspiracy prosecution under § 371, the prosecution "must allege and prove the commission of at least one overt act by one of the conspirators within [the five years prior to the return of the indictment] in furtherance of the conspiratorial agreement." *Id.* at 926. Continuing, the court noted that, before determining whether a conspiracy charge is time-barred, "it is essential to delimit the scope of the conspiratorial agreement alleged in the indictment, 'for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy.'" *Id.* (quoting *Grunewald v. United States*, 353 U.S. 391, 397, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957)).

Turning to the indictment before it, the Fifth Circuit noted it contained only one count which charged defendants with conspiring to violate 18 U.S.C. § 1001 by knowingly and willfully making false statements as to material facts of a matter within the jurisdiction of the Department of Labor, Manpower Administration. In light of the narrow scope of this indictment, the court concluded the conspiracy ended with the last false statement to the Department of Labor, which was made on August 13, 1969, and did not encompass the Department of Labor's subsequent awarding of a contract to defendants, within the limitations period, based upon defendants' false statements.

The court also rejected the government's assertion that proof at trial of an overt act that occurred within the limitations period, but which was not alleged in the indictment, was sufficient to satisfy the statute of limitations. Although the court agreed with the government that proof of a substituted unalleged overt act for an alleged overt act did not constitute a fatal variance and would be sufficient to support a conviction for conspiracy, the court stated the following as regards the statute of limitations issue:

> In a conspiracy prosecution for violating § 371 the statute of limitations must be computed from the date of the last overt act of which there is appropriate allegation and proof. We hold therefore that *for purposes of the statute of limitations the overt acts alleged in the indictment and proved at trial mark the duration of the conspiracy.*

533 F.2d at 929, emphasis in original, citations omitted.

In *United States v. Butler*, 792 F.2d 1528 (11th Cir.), *cert. denied*, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986), the Eleventh Circuit reached the same conclusion as the Fifth Circuit did in *Davis*. However, the Eleventh Circuit distinguished between non-overt act conspiracy charges and conspiracy charges, such as those under § 371, which require the government to prove an overt act:

> We hold that on a non-overt-act conspiracy charge, the indictment satisfies the requirements of the statute of limitations if

the government alleges and proves, at trial or pretrial, that the conspiracy continued into the limitations period. We further hold that on conspiracy charges which require listing of overt acts, the statute of limitations is satisfied if the last overt act alleged and proved occurs within the limitations period.

*Id.* at 1532–33, citations omitted. The Eleventh Circuit also held that the day following the last overt act alleged in the indictment (in an overt act case) "is the beginning date for calculation" of the statute of limitations. *Id.* at 1533.

Because I find both *Davis* and *Butler* persuasive, I would adopt the pleading requirements set forth therein and hold that, for statute of limitations purposes, an indictment charging a conspiracy violation under § 371 must allege at least one timely overt act in furtherance of the conspiracy. Unfortunately, the majority backs away from this bright-line approach and concludes it is applicable "only as to indictments that do not allege that the conduct constituting the conspiracy occurred within the statute of limitations period." Majority opinion at 532. The majority then proceeds to conclude the approach is inapplicable here because count 1 of the indictment alleged Stoner "committed or caused to be committed various overt acts ... including, but not limited to," the five specific overt acts listed in count 1and because count 1 alleges, in general terms, that the charged conspiracy continued "until in or about August 1989, the exact dates being unknown to the Grand Jury." *Id.* at 534. According to the majority, the general allegation of the conspiracy's ending date, though not specific nor tied to any particular overt act, is sufficient to satisfy the statute of limitations when read in conjunction with the boilerplate language indicating the list of specific overt acts alleged in count 1 is not exclusive. In short, the majority is willing to assume some unspecified overt act as committed after March 16, 1989, and that count 1 therefore satisfied the statute of limitations.

There are several reasons why I cannot accept the majority's conclusions. First, the majority has failed to cite a single case in support of its conclusion that the allegations upon which it relies, i.e., the boilerplate language indicating the overt acts alleged in the indictment are not exclusive and the general allegations of the conspiracy's ending date, are sufficient to satisfy the statute of limitations in a case involving an overt act conspiracy charge. Second, because these types of allegations are present in virtually all federal conspiracy indictments, the majority's holding will effectively prevent any defendant from ever mounting a successful challenge to the timeliness of an overt act conspiracy charge. In fact, the majority's holding will arguably invite prosecutors to pursue outdated conspiracy charges by simply alleging in an indictment, in a general manner, that a conspiracy continued into the statutory limitations period and that various unlisted overt acts occurred within the limitations period. *See generally Grunewald*, 353 U.S. at 404, 77 S.Ct. at 973 ("Prior cases in this Court have repeatedly warned that we will view with disfavor attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions."). Third, the majority's approach will allow the government to prosecute a defendant on the basis of facts not presented to a grand jury. *See United States v. Wood*, 958 F.2d 963, 974 (10th Cir. 1992) (holding that "an indictment must allege sufficient facts to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury."). Presumably, if a grand jury is able to determine the ending date of a conspiracy, it has before it some evidence of the final overt act in furtherance of that conspiracy. Here, count 1 of the indictment alleged the conspiracy spanned a period from "in or about March 1988" to "in or about August 1989." Thus, in addition to alleging the ending date, it does not seem unreasonable or "hyper-technical" to require the indictment to describe, with some degree of particularity, the overt act that gave rise to the grand jury's conclusion as to the conspiracy's ending date (or, at a minimum, some other *timely* overt act). Fourth, the majority's approach could effectively preclude a trial court from dismissing an indictment prior to trial. Specifically, in cases that are filed close to the end of the limitations period, the general pleading of the month and year in which the conspiracy ended

would not be sufficient to allow the trial court to determine, with particularity, whether the conspiracy charge was timely. Accordingly, the trial court would have to wait until after the government's case-in-chief to determine whether evidence of a timely overt act had been introduced. Thus, it is conceivable that a defendant could be put to the time, expense, and public humiliation of a criminal trial, only to have the trial court eventually determine that the charge was untimely. Finally, it is conceivable that the majority's approach would violate a defendant's Sixth Amendment right to reasonable notice of criminal charges. In particular, there is no explanation of how the ending date of a conspiracy allows a defendant to reasonably anticipate what overt act evidence will be presented at trial. *See, e.g., United States v. Pinto,* 838 F.2d 426, 433 (10th Cir.1988) (discussing effect of a variance between a conspiracy as charged and evidence adduced at trial).

In my opinion, count 1 is untimely. Applying the clear and understandable approach of *Davis* and *Butler,* it is apparent that none of the five specific overt acts alleged in count 1 occurred within the five-year limitations period preceding the return of the indictment. Further, count 1 cannot be salvaged by the allegations contained in counts 2–4 of the indictment. As the majority notes, count 1 does not expressly incorporate those counts by reference as required by Fed.R.Crim.P. 7(c)(1). Nor can those counts be implicitly incorporated into count 1. Although the government argues counts 2–4 should be implicitly incorporated into the conspiracy charge and considered as alleged overt acts for statute of limitations purposes, the majority has offered persuasive reasons why implicit incorporation is inappropriate in this case. In addition to those stated reasons, I would add the following. In *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the Supreme Court held that a defendant cannot be convicted on the basis of facts that may not have been specifically presented to, and found by, a grand jury. In particular, the Court noted that "[t]o allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the

indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure." *Id.* at 770, 82 S.Ct. at 1050. In my opinion, allowing implicit incorporation in this case would violate the precise principles announced in *Russell.* Although it can be argued that the substantive counts of embezzlement were undoubtedly overt acts in furtherance of the conspiracy, such an argument, no matter how strong, is simply a guess as to what was going on in the minds of the grand jury at the time it returned the indictment against Stoner on count 1. Moreover, the fact that the petit jury ultimately acquitted Stoner on all of the substantive embezzlement charges would seem to caution against any attempt to ascertain what the grand jury was thinking when it returned the indictment.

Several other factors also caution against allowing implicit incorporation in this case. As noted by the majority, a distinction between conspiracy charges and continuing criminal enterprise charges has been recognized, at least implicitly, by federal courts reviewing the sufficiency of the two charges. Although several circuits have concluded a continuing criminal enterprise indictment tracking the language of the statute is sufficient by itself, and need not list the specific predicate offense of the "continuing series of violations" element, *United States v. Paulino,* 935 F.2d 739, 749 (6th Cir.1991), *cert. denied,* 502 U.S. 914, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991); *United States v. Martell,* 906 F.2d 555, 558 (11th Cir.1990); *United States v. Amend,* 791 F.2d 1120, 1125 (4th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986); *United States v. Sterling,* 742 F.2d 521, 526 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985); *Sperling v. United States,* 692 F.2d 223, 226 (2d Cir.1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *United States v. Johnson,* 575 F.2d 1347, 1354 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 1214, 59 L.Ed.2d 454 (1979), I have found no cases holding that a conspiracy indictment is sufficient if it simply alleges that "an overt act" occurred. Likewise, I have found no cases

allowing implicit incorporation for purposes of determining the sufficiency of § 371 conspiracy charges. Further, there is arguably a distinction between flaws in an indictment that affect how sufficiently a charge is explained (e.g., as in *United States v. Staggs,* 881 F.2d 1527 (10th Cir.1989) (*en banc* ), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990)), or that simply constitute technical deficiencies, and flaws that affect whether or not a charge is timely. In fact, I have found no cases in which the government has been allowed to implicitly incorporate allegations from one charge to another for purposes of reviving an otherwise untimely charge. Finally, as suggested above, I find it patently unfair to allow the prosecution to revive an otherwise untimely conspiracy charge on the basis of allegations contained in substantive charges on which Stoner was acquitted.

For these reasons, I conclude that the conspiracy charge in count 1 of the indictment is time-barred, and I would therefore reverse and remand to the district court with directions to vacate Stoner's conviction.